UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIXIE HAISLIP,<br><br>        Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,[1] Commissioner of Social Security<br><br>        Defendant. | **1:12-cv-00964 GSA**<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## BACKGROUND

Plaintiff  ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for Disability Insurance benefits and Supplemental Security Income payments pursuant to Titles II and XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedures, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this action.

Magistrate Judge.[2]

## PRIOR PROCEEDINGS[3]

In February 2009, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging disability beginning December 20, 2008. AR 18, 164-170. Plaintiff's application was denied initially and on reconsideration; Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). AR 12, 18, 85-94. ALJ Patricia Henry held a hearing and issued an order denying benefits on January 19, 2011, finding Plaintiff was not disabled. AR 18-29. The Appeals Council subsequently denied review, making it the final decision of the Commissioner for purposes of review. AR 1-4.

### 1.   Hearing Testimony

ALJ Henry held a telephonic hearing on December 8, 2010, in Rock Springs, Wyoming.[4] Plaintiff appeared and testified; she was assisted by attorney Manuel Serpa who was located in California. AR 37-81. Vocational Expert ("VE") Christine Backert also testified. AR 65-81.

#### a.   Plaintiff's testimony

Ms. Haislip was 53 years old at the time of the hearing. AR 64. She completed high school but no college, has no children, and has never been married. She is currently living in her friend Cindy's home. AR 38–40, 63.

In the past, Ms. Haislip has worked as a restaurant cashier, a department-store sales clerk, a telephone operator, and a security guard. AR 215–18. Most recently, she worked as a cashier at the Arctic Circle restaurant, but Ms. Haislip was only able to work about two hours per day due to her problems with depression, remembering things, focusing on work tasks, getting along with other people, and becoming irritable and angry. AR 43–56. She was only able to remain

---

[2] The parties consented to the jurisdiction of the United States Magistrate Judge. (*See* Docs. 9 & 10.)
[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.
[4] After the completion of the hearing, Plaintiff subsequently moved to Maricopa, California so venue is proper in this district.

employed there because she knew the owners. AR 53-54. They restricted her to a few hours because she could not handle any more than that. AR 53–54. The position was stressful for her because she made numerous mistakes handling orders, was unable to focus on the task at hand, and was frequently unable to remember customers' orders long enough to repeat them to the cooks correctly. AR 53–54. Additionally, she did not get along with the managers or her coworkers because of her impulsive anger; she had problems "popping off" or yelling at the managers. AR 54–57.

Plaintiff has a long-standing problem with controlling her anger and becoming irritated at people, although it is not always triggered by specific stimuli: "Sometimes I just wake up that way . . . and then if the wrong person comes to me, then I'm really irritated or mad" AR 56. She "[tries] to stay alone" and does not socialize with many people besides her friend Cindy. AR 58, 63. She describes Cindy as one of the few people who do not make her angry, adding that Cindy helps her organize her life, prepare meals, keep appointments, and remember where she leaves things. AR 58–59. However, she does not get along with Cindy's grandson, who also lives in the house, and she has no other friends in Wyoming. AR 63. In the past, Plaintiff received treatment at Southwest Counseling Services where she received prescriptions that helped her mood, but she currently is not taking any medications because she does not have a doctor. AR 53, 62.

With regard to activities of daily living, Plaintiff is able to take care of her personal hygiene and helps with chores around the house. AR 47. During a typical day, she sleeps a lot because she suffers from insomnia. AR 47-48. She sometimes gets on the computer to play games and check e-mails, but she mostly just sleeps. AR 49. She used to go to church but she does not do that anymore. AR 50.

///

///

**b. VE Christine Backert**

VE Christine Backert also testified at the hearing. The ALJ asked the VE to assume a hypothetical person of the same age, education, and work experience as Plaintiff, who has no exertional limitations, but who is limited to occupations which require no prolonged reading for content and comprehension, no use of mathematical calculations such as a cashier or teller, and is limited to unskilled work. AR 66. The VE indicated that such an individual could work as a security guard, telephone operator, salvage clerk, cooker's helper, industrial cleaner, and a day worker.[5] AR 66-67.

Next, the ALJ asked the VE to assume a hypothetical person of the same age, education, and work experience as Plaintiff, who has no exertional limitations, but who is limited to unskilled work and can only have occasional interaction with supervisors, co-workers, and members of the general public. AR 71. The VE indicated that this person could work as an industrial cleaner, a day worker, a security guard, and a power screwdriver operator. AR 71.

The ALJ asked the VE to assume a third hypothetical person of the same age, education, and work experience as Plaintiff, who has no exertional limitations, but who can only have occasional interaction with supervisors, co-workers, and members of the general public, and is limited to occupations that are not performed in a fast paced production or quota based environment.[6] AR 71. The VE indicated that this person could work as a day worker, a

---

[5] After the first hypothetical, the ALJ posed a second hypothetical involving a person of the same age, education, and work experience as Plaintiff, who has no exertional limitations but who is limited to occupations which require no prolonged reading for content and comprehension, no use of mathematical calculations such as a cashier or teller, and who is limited to SVP 2 work. AR 67. However, Plaintiff's attorney asked the ALJ a question after the second hypothetical was posed which resulted in an extensive dialogue. AR 67. When the ALJ repeated her hypothetical to the VE, she returned to the first hypothetical rather than to the second hypothetical posed. In response, the VE identified a cooker's helper, an industrial cleaner, and a day worker which are jobs that meet the SVP 2 classification. AR 69-70. A "SVP" refers to the Specific Vocational Preparation needed to perform a job. The jobs listed above reflect the responses the VE gave in response to both hypotheticals.

[6] Plaintiff's attorney asked the ALJ to repeat the third hypothetical posed after the VE had listed the proposed jobs. AR 71-72, 73-74. The ALJ repeated the hypothetical but included a limitation for unskilled work that was not included in the initial hypothetical posed. AR 73. Therefore, the unskilled limitation is not included in the instant hypothetical listed because the VE did not consider the unskilled limitation when identifying the proposed jobs.

4

surveillance system monitor, and a power screwdriver operator.  AR 72.

In a fourth hypothetical posed by Plaintiff's counsel, the VE was asked to assume whether a person of the same education, and work experience as Plaintiff, except that the individual fails to pay close attention to details, makes careless mistakes at work, often has difficulties sustaining attention to tasks, does not seem to listen to when spoken to directly, often does not follow through on instructions,[7] fails to finish duties in the workplace, often has difficulties organizing tasks and activities including losing things necessary for the task, and is often forgetful in daily activities. AR 74-75.  The VE indicated that this person would not be able to work because the person would not be able to stay on task for ninety percent of the required time.  AR 76.

Plaintiff's counsel asked the VE whether a person with a marked limitation in the ability to respond appropriately to both co-workers and supervisors would preclude Plaintiff's past work and all work generally.[8]  AR 77. The VE indicated that all work would be precluded. AR 77.

Finally, counsel asked the VE to consider a person of the same education and work experience as Plaintiff, with moderate limitations in the in the following areas : 1) the ability to maintain attention and concentration for extended periods; 2) the ability to sustain an ordinary routine without special supervision; 3) the ability to interact appropriately with the general public; 4) the ability to accept instructions and respond appropriately to criticism from supervisors; 5) the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; 6) the ability to respond appropriately to changes in the work setting; 7) the ability to travel in unfamiliar places or use public transportation; and 8) the ability to set realistic goals or make plans independently of others.[9]  AR 79.  The VE indicated that this person would be unable

---

[7] The transcript regarding the wording of this portion of the hypothetical is unclear, however, it appears that counsel was listing items found in Dr. Gibson's report at Exhibit 3F at pg. 6 verbatim.  Accordingly, the Court has inserted that language here.  AR 74, 334.
[8] During the hearing, Plaintiff's counsel indicated that his hypothetical was based on Dr. Anderson's report. AR 77, 336-343.
[9] This hypothetical was based Dr. Fleming's report.  AR.78, 358 -383.

to work at any job. AR 79.

**2.      Medical Record**

The entire medical record was reviewed by the Court. AR 312- 394.  The relevant medical records are discussed below as needed.

   **a.**   *Treatment at Southwest Counseling Service*

Plaintiff received counseling from Southwest Counseling Service from October 2008 until March 2010.  AR 323, 327, 388.  During the initial assessment in October 2008, she reported that she had been depressed "on and off" for most of her life.  AR 323.  Plaintiff told her counselor that she was taking Prozac, but it did not help her. AR 323. She complained of an inability to focus and remember information; poor sleep; and out-of-control appetite.  AR 323. She showed a euthymic mood during the examination, made good eye contact, was cooperative, and displayed adequate concentration and no memory impairment.  AR 325.  She was preliminarily diagnosed with attention deficit/hyperactivity disorder ("ADHD") predominately inattentive type, and major depressive disorder (recurrent, moderate).  AR 325.  The counselor assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 65.[10] AR 325.

On November 5, 2008, Plaintiff was examined by psychiatrist James Robinett, M.D. Plaintiff indicated that she was unable to retain information and struggled to perform simple tasks with supervision.  AR 388. Dr. Robinett noted Plaintiff reported feeling depressed and appeared to have a significant problem with anxiety.  AR 388. During the interview, Plaintiff had difficulty talking with him and Dr. Robinett opined Plaintiff was uncomfortable around people, especially those in positions of authority.  AR 388.  He also noted Plaintiff had difficulty thinking abstractly

---

[10] The Global Assessment of Functioning or "GAF" scale reflects a clinician's assessment of the individual's overall level of functioning.  American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 30 (4th ed. 2000) ("DSM IV"). A GAF between 61 and 70 indicates "[s]ome mild symptoms (e.g. depressed mood and mild insomnia) or some difficulty in social occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful relationships…" DSM-IV at 32.

and that her memory appeared to be significantly limited which he thought was due more to her anxiety since she appeared to have a fully intact long-term memory. AR 389.

Plaintiff reported a past history of drug addiction including taking methamphetamine since the 1970's until approximately six months prior to his appointment with her. AR 388. She reported she had taken Zoloft in the past, but that it was not helpful. AR 388. At the time of the appointment, she was taking Prozac which she indicated also did not help her. AR 388. Dr. Robinett discontinued the Pozac and began Strattera and Trazodone. AR 388. He diagnosed Plaintiff with generalized anxiety disorder, borderline intellectual functioning, and methamphetamine/polysubstance addition. He also assigned Plaintiff a GAF score of 45.[11] AR 388.

In February 2009, Plaintiff saw Dr. Robinett again. Tr. 327. Plaintiff reported that she experienced some benefit from taking Geodon (a drug that was apparently prescribed to her since the last reported visit with Dr. Robinette). AR 327. Plaintiff reported that her medication had reduced her anger, impulsiveness, and mood changes, but she continued to be impatient and easily frustrated. AR 327. Dr. Robinette also observed that Plaintiff was impatient. AR 327. Plaintiff reported that the Trazodone appeared to be helping her insomnia, but it did not give her complete relief. AR 327. Dr. Robinette increased Plaintiff's prescription for Geodon and continued Plaintiff's prescription for Trazadone. AR 327.

On January 25, 2010, Plaintiff was seen by Dr. Methner. She reported that she had gotten angry at two of her bosses at work in the past month and her hours were reduced because of her explosiveness. AR 392. Dr. Methner indicated that Plaintiff was quite anxious, rocked back and forth in her chair, had pressured speech, exhibited some paranoid thoughts, and had impaired

---

[11] A GAF of 41–50 indicates that the individual has "[s]erious symptoms … OR any serious impairment in social, occupational, or school functioning …" DSM-IV at 32.

insight and judgment. AR 329. Although Plaintiff reported that she was taking her medications regularly, she indicated that her bosses have questioned that, so "she may be forgetting." AR 392. Dr. Methner diagnosed Plaintiff with intermittent explosive disorder, and affirmed the prior diagnoses of generalized anxiety disorder and ADHD. AR 392. He discontinued her prescription for Geodon due to side effects, and prescribed Depakote, Wellbutrin, Trazadone, and Concerta. AR 391.

Plaintiff saw Dr. Methner on March 11, 2010, and reported that she was going to be moving to California. AR 392. She reported her medications helped her be more socially appropriate and she was better at managing her impulsive anger. AR 390. During the appointment, she exhibited a flat affect, increased rocking behavior, and anxious mood. AR 392. Dr. Methner's final diagnosis included generalized anxiety disorder, ADHD, intermittent explosive disorder, and depressive disorder (not otherwise specified). AR 390.

  **b.**  *Dr. Gibson, PhD*

On March 31, 2009, Dr. Mark Gibson, Ph.D., a consultative state agency psychologist, completed a psychological assessment which included, *inter alia*, administering a Wechsler Memory Scale ("WMS-IV"). AR 329-335. Plaintiff told Dr. Gibson that she was irritable and that her mind wandered; that she could not pay attention; and that she had trouble working with the public. AR 329-335. Plaintiff was "quite irritable" during the examination, but became more pleasant as the examination went on and eventually gave good effort on testing. AR 331. She told Dr. Gibson that her concentration was poor, and that she was depressed . AR 331.

Dr. Gibson noted that Plaintiff had an average memory, fair insight, fair to poor judgment, and low average intellectual functioning. AR 332. He found few memory problems, despite Plaintiff's claim to have a poor memory. AR 333. He did note, however, that her visual working memory score placed her in the fourth percentile of same aged-peers which would cause her to

struggle when processing information quickly form her short-term memory storage. AR 333. Moreover, she would likely struggle with understanding instructions given a stressful circumstance such as a fast food setting. AR 333.

Dr. Gibson diagnosed Plaintiff with ADHD, Major Depressive Disorder (recurrent, moderate), a relational problem (not otherwise specified), and assigned her a GAF score of 55.[12] He based the ADHD diagnosis on the fact that Plaintiff demonstrated the following symptoms : 1) failing to pay close attention to details; 2) making careless mistakes at work; 3) often has difficulty sustaining attention in tasks; 4) often does not seem to listen when spoken to directly; 5) often does not follow through on instructions; 6) failing to finish duties in the workplace; 7) often has difficulty organizing tasks and activities; 8) often loses things necessary for tasks or activities; and 9) is often forgetful in daily activities. He noted that Plaintiff's depression and ADHD issues are troubling for her, but it is unclear if these disorders keep her from being able to work in any situation. AR 335. He also found that Plaintiff has struggled with dealing with others or handling changes in routine. He further noted that "it is hoped that [Plaintiff] will be able to find work in a job that allows her to work independently." AR 335.

    **c.**    *Dr. Brent Anderson*

Dr. Brent Anderson, a state agency consultative examiner, conducted a psychological assessment on April 15, 2009. AR 336-343. Dr. Andersen noted that Plaintiff was nervous, defensive, and uncomfortable during the examination. AR 337. Plaintiff reported that her mood had improved with medication, and that she was less irritable. AR 337. She stated that she lost jobs because she could not get along with coworkers or customers. AR 338. Dr. Andersen noted

---

[12] A GAF between 51 and 60 indicates"[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers.) DSM-IV at 32.

that Plaintiff had mild to moderate emotional distress, and that Plaintiff believed herself to have poor concentration, memory, and judgment. AR 340. However, he did not see attention or concentration problems during the examination. AR 341.

Dr. Andersen diagnosed Plaintiff with dysthymic disorder (early onset), anxiety disorder (not otherwise specified), "rule out attention deficit hyperactivity disorder," and a history of polysubstance and alcohol dependence. AR 342. He assigned her a GAF score of 51, and noted that she lacked a social support system. AR. 343.

After performing the Wechsler Abbreviated Score for Intelligence and the Minnesota Multiphasic Personality Inventory ("MMPI") he opined that Plaintiff had fairly good native intelligence in the low-average range that can be utilized if she is not under stress. AR 341. She was able to focus in a one-to-one testing format. AR 341. Dr. Anderson noted that it was unclear whether Plaintiff had ADD, however, he opined that her cognitive problems are likely compromised by psychosocial difficulties. AR 341.

Dr. Anderson noted that that results of the MMPI-2 depressive score were "highly elevated." AR 342. Dr. Anderson commented that "[t]he depression or dysthymia and what appears to be prominent anxiety will have a significant impact on her ability to work." AR 342. He also noted that "[i]t is not likely that her interpersonal deficiencies, shyness and avoidant features are going to go away anytime soon and she will work best in positions that do not require high levels of social facility." AR 342.

**d.    *Dr. Dean Schroeder***

On April 16, 2009, Dr. Dean Schroeder, a state-agency non-examining psychologist reviewed Plaintiff's records. AR 344-357. Overall, he found that Plaintiff's mental impairments caused mild limitations in activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. AR

354.  In particular, Dr. Schroeder noted that Plaintiff exhibited moderate limitations in several areas including : 1) the ability to understand and remember detailed instructions (AR 358); 2) the ability to carry out detailed instructions (AR 358); 3) the ability to maintain attention and concentration for long periods (AR 358); 4) the ability to interact appropriately with the public (AR 359); 5) the ability to accept instructions and respond appropriately to criticism from supervisors (AR 359); 6) the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes (AR 359); and 7) the ability to respond appropriately to changes in the work setting.  AR 359.

Dr. Schroeder ultimately opined that Plaintiff would be able to perform simple, routine work with limited social contact.  However, he indicated she would struggle with understanding instructions in stressful circumstances.  AR 361.

    e. ***Dr. Grant Fleming***

On July 19, 2009, Dr. Grant Fleming, a non-examining state agency psychologist reviewed Plaintiff's records. AR 366-383.  He diagnosed Plaintiff with attention deficit hyperactivity disorder – inattentive type, major depressive disorder/dysthymic disorder, anxiety disorder (not otherwise specified), and personality disorder.  AR 366-373.  He agreed with Dr. Schroeder's assessment and found that Plaintiff's mental impairments caused mild limitations in activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace.  AR 376.  He also identified the same moderate limitations reported by Dr. Schroeder, but also added Plaintiff was moderately impaired in the following areas including : 1) her ability to sustain ordinary routine without special supervision (AR 380); 2) the ability to travel in unfamiliar places or use public transportation (AR 381); 3) and the ability to set realistic goals or make plans independently of others (AR 381).

Based on this assessment Dr. Fleming concluded that Plaintiff is capable of performing simple, routine tasks in a non-pressured environment. He also opined that Plaintiff is able to adjust to situations and perform work requiring little or no judgment and that can be learned within thirty days. AR 382.

### 3. **The Disability Determination Standard and Process**

To qualify for benefits under the Social Security Act, Plaintiff must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work, but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. § 404.1520(a)-(f). The ALJ proceeds step by step in order and stops upon reaching a dispositive finding that the claimant is disabled or not disabled. 20 C.F.R. § 404.1520(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. §§ 416.927, 416.929.

The ALJ is required to determine (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability; (2) whether the claimant had medically-determinable "severe" impairments;[13] (3) whether these impairments meet or are medically

---

[13] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic

12

equivalent to one of the listed impairments set forth in 20 C.F.R. 404, Subpart P, Appendix 1; (4) whether the claimant retained the RFC to perform her past relevant work;[14] and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level.  20 C.F.R. § 404.1520(a)-(f).

### 4.     Summary of the ALJ's Findings and Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 14-21.  More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 20, 2008.  AR 20.  Further, the ALJ identified major depressive disorder, anxiety disorder not otherwise specified, personality disorder, (rule out ADHD), polysubstance abuse and methamphetamine addiction as severe impairments.  AR 20-21.  The ALJ performed an analysis pursuant to paragraphs B and C of the listing impairments for mental disorders and determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments under 12.04, 12.06, 12.08, and 12.09. AR 20-22.

Based on a review of the entire record, the ALJ determined that Plaintiff has the RFC to perform a substantial range of work at all exertional levels, but limited Plaintiff to unskilled work, which requires no prolonged reading for content and comprehension, and no use of mathematical calculations such as a cashier or teller work. The ALJ also limited Plaintiff to occasional interaction with supervisors, coworkers, and the general public.  AR 22.  After considering all of the above, the ALJ found that Plaintiff could perform her past relevant work as a fast food worker and cashier II.  AR 27.  Additionally, the ALJ determined Plaintiff could work as an industrial

---

work activities.  *See* 20 C.F.R. § 404.1520(c).

[14] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations."  20 C.F.R. § 404.1545.  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

cleaner and a power screwdriver operator.  AR 28.  Therefore, the ALJ determined Plaintiff was not disabled under the Act.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.*  Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

Here, Plaintiff argues that: 1) the RFC and the hypotheticals posed to the VE lack a basis in the administrative record; and 2) the ALJ's adverse credibility determination is not supported by substantial evidence.

## DISCUSSION

**1.   The ALJ's Formulation of the RFC and Hypotheticals were Not Proper**

Plaintiff argues the ALJ's RFC and the hypotheticals are not supported by substantial evidence in the record.  In particular, Plaintiff contends that the ALJ credited several doctors' opinions, yet she failed to incorporate all of the doctors' limitations into the RFC or the hypotheticals.  Additionally, the ALJ erred in finding Plaintiff could perform her past relevant work as a fast food worker and a cashier II based on the ALJ's own RFC, as well as the VE's testimony.  Finally, even assuming the RFC was correct, the hypotheticals posed to the VE were deficient because they did not incorporate the combined effects of the limitations identified by the

14

ALJ.

In reply, Defendant argues that the ALJ's RFC properly incorporates all of the doctors' opinions and is supported by substantial evidence. Defendant concedes that the ALJ erroneously concluded that Plaintiff could perform her past relevant work as a fast food worker and a cashier at step four. However, the ALJ formulated hypotheticals that reflected all of Plaintiff's limitations at step five. While the ALJ improperly concluded Plaintiff could work as a screwdriver operator, she properly concluded that Plaintiff was able to work as an industrial cleaner. The VE also testified that Plaintiff could work as a day worker which further supports the ALJ's finding that Plaintiff is not disabled.

### a. *The ALJ's Treatment of the Medical Record*

When formulating the RFC, the ALJ noted the following:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a substantial range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to unskilled work which requires no prolonged reading for content and comprehension, and no use of mathematical calculations such as a cashier or teller work; and is limited to occasional interactions with supervisors, coworkers, and the general public.

AR 22.

In reaching this conclusion, the ALJ credited the opinions of four doctors : Dr. Gibson, a consultative psychologist (AR 239-235); Dr. Anderson, a consultative psychologist (AR 336-343); and Drs. Schroeder and Fleming (244-257; 366-383), who were both non-examining psychologists. AR 25-27. A review of the record reveals that although the ALJ did a thorough summary of the medical record, she did not address all of the limitations identified by each doctor. For example, the ALJ appears to incorporate Drs. Schroeder's conclusion that Plaintiff would be able to perform simple, routine work with limited social contact into her RFC. AR 27,

361. However, Dr. Schroeder's assessment also identified several other moderate limitations that the ALJ does not specifically address including Plaintiff's inability to: 1) understand and remember detailed instructions; 2) carry out detailed instructions; 3) maintain attention and concentration for long periods; 4) interact appropriately with the public; 5) accept instructions and respond appropriately to criticism from supervisors; 6) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and 7) to respond appropriately to changes in the work setting.  AR 358-359.  Similarly, Dr. Fleming concluded that that Plaintiff is capable of performing simple, routine tasks in a non-pressured environment.  AR 382.  However, in addition to the moderate limitations identified by Dr. Schroeder, Dr. Fleming noted three other moderate limitations including Plaintiff's inability to: 1) sustain an ordinary routine without special supervision; 2) travel in unfamiliar places or use public transportation; and 3) set realistic goals or make plans independently of others.  AR 380, 381.  Finally, Dr. Gibson noted that his ADHD diagnosis was based on the following symptoms exhibited by Plaintiff:  1) fails to give close attention to details; 2) makes careless mistakes at work; 3) often has difficulty sustaining attention in tasks; 4) often does not seem to listen when spoken to directly; 5) often does not follow through on instructions; 6) fails to finish duties in the workplace; 7) often has difficulty organizing tasks and activities; 8) often loses things necessary for tasks or activities; and 9) is often forgetful in daily activities.  AR 335.

      Here, the ALJ's credits all of these opinions, but the RFC determination did not account for all of the limitations, nor did the ALJ address them in any way.  Additionally, the Court notes that there are inconsistencies between the doctors' diagnoses that the ALJ does not acknowledge.  For example, all of the doctors found that Plaintiff has ADHD except for Dr. Anderson who notes he is not sure, and that ADHD needs to be ruled out.  Since several of the above limitations relate to attention and concentration deficits, the extent to which the ALJ credits the doctors' opinions

will likely effect the extent any identified limitations can be supported by substantial evidence.

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.945(1). The assessment of RFC must be "based on all the relevant evidence in [the claimant's] case record." *Id*. Furthermore, if the RFC assessment conflicts with a medical source opinion, the ALJ must explain why the opinion was not adopted. SSR 96-8.  Thus, if the ALJ does not find the limitations to be supported by substantial evidence, she must explain why.  The ALJ failed to do so.

Moreover, Drs. Gibson and Anderson were examining physicians. An examining physician's uncontradicted opinion, like a treating physician's, may be rejected only for clear and convincing reasons.  When an examining physician's opinion is controverted by another doctor's opinion, the examining physician's opinion may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d at 830–31 (9th Cir. 1995). Likewise, Drs. Schroeder and Fleming were nonexamining physicians.  AR 356–61.) "[T]he findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996). Thus, to the extent the ALJ may have disagreed with certain aspects of any of the opinions, the ALJ was required, at a minimum, to offer specific and legitimate reasons supported by substantial evidence in the record for rejecting those opinions.  The ALJ did not so in this case.

Defendant has cited to *Stubbs-Danielson v. Astrue*, 539 F. 3d 1169, 1173 (9th Cir. 2008) for the premise that the RFC represents what the claimant can do rather than focusing on a claimant's limitations.  The Commissioner argues that the ALJ's RFC limiting Plaintiff to unskilled work and occasional interactions with supervisors, coworkers, and the general public is sufficient because Drs. Schroeder and Fleming ultimately concluded that Plaintiff would retain the capacity to perform simple work in a low-stress environment with only occasional interaction

17

with supervisors, coworkers, and the public, despite the other moderate limitations they identified. However, the ALJ did not indicate that this was part of her analysis, and this Court is not permitted to make ad hoc rationalizations for the ALJ.[15] *Barbato v. Comm'r*, 923 F.Supp. 1273, 1276, n. 2 (C.D.Cal. 1996); *Lewin v. Schweiker*, 654 F.2d 631, 634-35 (9th Cir. 1981). A reviewing court cannot affirm an ALJ's decision denying benefits on a ground not invoked by the Commissioner. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006) *(citing Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001)). Additionally, there were several other limitations identified by these doctors that the ALJ's RFC did not address such as Plaintiff's: 1) inability to sustain an ordinary routine without special supervision; 2) the inability to travel in unfamiliar places or use public transportation; 3) and the inability to set realistic goals or make plans independently of others.

Finally, not only did the ALJ's RFC determination fail to include all of the limitations indicated by the opinions of all of the doctors, the ALJ also failed to include those limitations in the ALJ's hypothetical question posed to the VE. AR 66-74. "Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant . . ." *Lewis v. Apfel*, 236 503, 517 (9th Cir. 2001) (quoting *Gamer v. Secretary of Health and Human Services*, 815 F. 2d 1275, 1279-80 (9th Cir. 1987); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988). The testimony of a VE "is valuable only to the extent that it is supported by medical evidence." *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982). The VE's opinion about a claimant's residual functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record. *Embrey*, 849 F.2d at 422. Here, because the ALJ failed to properly evaluate the medical evidence and fully incorporate the limitations into the

---

[15] The Court also notes that it appears that the ALJ may have only intended to give Dr. Gibson's diagnosis of ADHD less weight since at step two the ALJ stated, "Rule out ADHD," which is more consistent with Dr. Anderson's diagnosis. AR 20, 26-27, 334, 342. Again, since the ALJ did not articulate this reason as a basis for the opinion, the Court may not adopt this reasoning.

hypothetical questions, the VE's testimony cannot constitute substantial evidence to support the ALJ's findings.

Given the above, the case is remanded to allow the ALJ an opportunity to re-examine the record and evaluate the medical opinions so that any contradictory opinions may be resolved, and any limitations that are supported by substantial evidence can be identified. The ALJ shall incorporate any limitations that are supported by the substantial evidence into the RFC and hypotheticals posed to the VE. The ALJ is only required to present the VE with those limitations she finds to be credible and supported by the evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001). However, any hypothetical presented must contain *all* of the limitations the ALJ identifies.[16]

Since this Court found error with the ALJ's formulation of the RFC, it is not necessary to address Plaintiff's other arguments related to step four and step five of the ALJ's decision. Furthermore, because the Court remands this case for renewed consideration of the medical evidence, the Court dispenses with an exhaustive analysis of the ALJ's assessment of Plaintiff's credibility. Consideration of Plaintiff's credibility is inescapably linked to conclusions regarding the medical evidence. 20 C.F.R. § 416.929. As such, the re-evaluation of the medical evidence may impact the ALJ's findings as to Plaintiff's credibility.

///

///

///

///

///

///

---

[16] At the hearing, the ALJ listed individual hypotheticals that included the limitations separately rather than listing all of the limitations combined in one hypothetical. AR 66-74.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence.  Therefore, the case is REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Dixie Haislip and against Defendant Carolyn W. Colvin, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: __September 30, 2013__                    __/s/ Gary S. Austin__
                                                  UNITED STATES MAGISTRATE JUDGE